842 A.2d 762

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

John W. HERMINA.

Misc. AG No. 88, Sept. Term, 2002.

Court of Appeals of Maryland.

Feb. 13, 2004.

504

**506**

---

Melvin Hirshman, Bar Counsel and Raymond A. Hein, Assistant Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Albert D. Brault, Esquire, of Rockville, for respondent.

Argued before BELL, C.J., ELDRIDGE *, WILNER, CATHELL, BATTAGLIA, LAWRENCE F. RODOWSKY (retired, specially assigned) and THEODORE BLOOM, (retired, specially assigned) JJ.

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled

WILNER, Judge.

Acting through Bar Counsel, the Attorney Grievance Commission filed a petition for disciplinary action against respondent, John Hermina, charging him with violating several of the Maryland Rules of Professional Conduct (MRPC). Pursuant to Maryland Rule 16–752(a), we referred the petition to Judge Maureen Lamasney, of the Circuit Court for Prince George's County, to conduct a hearing and make findings of fact and proposed conclusions of law.

After a three-day hearing, Judge Lamasney filed a Statement of Findings of Fact and Conclusions of Law in which she concluded that Hermina had violated MRPC Rules 1.1 (Competence); 1.3 (Diligence); 3.2 (Expediting Litigation); 3.3(a)(1) (Making False Statement of Material Fact to Tribunal); 3.4(c) (Knowingly Disobeying Obligation Under Rules of Tribunal); 3.4(d) (Frivolous Discovery Request, Failure to Comply with Proper Discovery Request); 3.5(a)(8) (Conduct Intended to Disrupt Tribunal); 8.2(a) (False Statement as to Qualification or Integrity of Judge); 8.4(a) (Violating Rules of Professional Conduct); 8.4(c) (Conduct Involving Dishonesty, Fraud, Deceit, or Misrepresentation); and 8.4(d) (Conduct Prejudicial to Administration of Justice). Judge Lamasney found two extenuating circumstances to exist, one dealing specifically with the violation of MRPC Rule 3.2, and one, more general, dealing with Hermina's character and contributions he had made to various causes. Both parties filed exceptions attacking various findings made by the judge. We shall find merit in most, but not all, of the exceptions filed by Hermina.

## BACKGROUND

The charges against Hermina arose from a lawsuit that he filed on behalf of Kevin Reed against the Baltimore Life Insurance Company (BLIC), Reed's former employer, and David Griffin, BLIC's manager of client relations. The suit,

---

pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

which was one of seven that Hermina had filed against BLIC, was filed in May, 1997, in the Circuit Court for Montgomery County and was eventually tried before a jury in June, 1998, with Judge Martha Kavanaugh presiding. The nature of that action is described in the opinion of the Court of Special Appeals in *Reed v. Baltimore Life,* 127 Md.App. 536, 733 A.2d 1106 (1999), affirming the trial court judgments. BLIC was represented by Barrett Freedlander, who was general counsel to BLIC, and by David Erb and Philip Barnes.

Reed's complaint included allegations of defamation, intentional infliction of emotional distress, and tortious interference with business relations. BLIC filed a counterclaim alleging breach of contract, breach of fiduciary duty, and fraud on Reed's part. All or most of this stemmed from Reed's dismissal as a life insurance sales agent due to BLIC's conclusion that he had engaged in a number of highly improper practices with respect to universal life policies that he had sold. At the end of the plaintiff's case, Judge Kavanaugh entered judgment for Griffin on all claims against him and for BLIC on the claim of intentional infliction of emotional distress. The jury then found for BLIC on the defamation and tortious interference claims and on its counterclaim against Reed, finding on the counterclaim that Reed had committed fraud and that he had breached his fiduciary and contractual duties to BLIC. A money judgment was entered against Reed on the counterclaim.

The course of the litigation was extremely contentious and often uncivil. The lawyers traded accusations against one another regarding a variety of pre-trial, and often wholly extraneous, matters, which no doubt made Judge Kavanaugh's job much more difficult than it needed to be. Some of those disputes required Judge Kavanaugh to determine which lawyer to believe, and, in most instances, she did not find Hermina's statements to be credible. Indeed, it appears that Bar Counsel's petition was triggered by an Opinion and Order entered by Judge Kavanaugh at the conclusion of the litigation, in response to a motion filed by BLIC for sanctions against Hermina. Judge Kavanaugh forwarded a copy of her

opinion to Bar Counsel. Although she denied the request for sanctions, she found Hermina's conduct to be "egregious." She stated, among other things, that he never provided any discovery to the defense, despite his representations to the contrary, that he did receive discovery from BLIC despite his protestations to the contrary, that "he lied to the Court concerning these issues," that he falsely accused the court of having an *ex parte* conference on jury instructions, and falsely accused the courtroom staff of removing documents from the court file.

The proceeding before Judge Lamasney was also a contentious one, involving accusations, counter-accusations, and a great deal of disputed evidence. Judge Kavanaugh, Mr. Freedlander, Mr. Erb, Mr. Barnes, and Mr. Hermina testified, along with other witnesses, and dozens of documents and trial transcript excerpts were admitted. Judge Lamasney also had to make credibility decisions; she resolved most of those credibility issues in favor of Bar Counsel's witnesses and expressly found some of Hermina's testimony not to be credible. She said, in that regard:

"The Court finds that the testimony of Judge Kavanaugh, Mr. Freedlander, Mr. Barnes and Mr. Erb to be credible. Therefore, this Court rejects the respondent's version of events and accepts the testimony of Judge Kavanaugh, Mr. Erb, Mr. Barnes and Mr. Freedlander." [1]

MRPC Rule 3.3(a)(1) provides that a lawyer shall not knowingly make a false statement of material fact or law to a tribunal. Judge Lamasney found that Hermina misrepresented three basic things to the trial court: (1) that he had filed a set of interrogatories in May, 1997, which were never answered when, in fact, he never filed those interrogatories; (2) that he had not received requested documents from BLIC in response to discovery when, in fact, he had received those documents; and (3) that a pre-trial protective order entered

---

1. Judge Lamasney erroneously refers to Mr. Freedlander as Mr. Freelander. We shall use the correct spelling, even when quoting from her findings.

by Judge Rupp had precluded him from conducting discovery when, in fact, the order was a limited one and did not preclude him from conducting discovery. She also found that those misrepresentations were deliberate and intentional, and not negligent.[2]

MRPC Rule 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on the assertion that no valid obligation exists. Rule 3.4(d) precludes a lawyer from making a frivolous discovery request and from failing to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party. Judge Lamasney found that Hermina did not provide discovery after receiving a timely request and that his reasons for that failure were without merit and constituted a violation of both the discovery Rules and a scheduling order entered by the court. That, she concluded, constituted a violation of MRPC 3.4(c) and (d) as well. She also found that Hermina had failed to participate in a pre-trial conference ordered by the court in its scheduling order, and that failure constituted a separate violation of MRPC 3.4(c).

MRPC Rule 3.2 requires a lawyer to make reasonable efforts to expedite litigation consistent with the interests of the client. Early in the course of the litigation, Judge Weinstein, then the county administrative judge, issued a scheduling order and an order for mandatory pre-trial conference. Those orders, among other things, required the parties to cooperate in the preparation of a joint pre-trial statement, to be filed with the court by March 20, 1998, and to meet and confer at least a week before then in order to prepare that statement. Judge Lamasney found that the purpose of that requirement was to expedite the litigation and that, by refusing to cooperate in the preparation of the joint statement and

---

**2.** Judge Lamasney also found as a fact that Hermina had falsely accused Freedlander of having an improper *ex parte* conversation with a judge in Carroll County in another case, but she never tied that finding to any particular MRPC violation, so we shall not consider that finding.

to participate in the pre-trial conference, Hermina had violated MRPC 3.2.

MRPC 3.5(a)(8) provides that a lawyer shall not engage in conduct intended to disrupt a tribunal. Judge Lamasney found that, by objecting to the introduction of documents on the basis that he had not received them, when, in fact, he had received them, by moving for a mistrial based on the assertion that BLIC had failed to answer interrogatories that Judge Lamasney found had not been sent, and by moving to disqualify Judge Kavanaugh for unsupportable reasons, Hermina had violated that Rule. She concluded that those actions "were intended to and did disrupt the orderly progress of the trial."

MRPC 8.2(a) provides that a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge. On July 11, 1998, Hermina wrote a letter to Mr. Erb, in which he at least suggested that Erb, Barnes, and Judge Kavanaugh had an *ex parte* conference "during which the proposed jury instructions were discussed." Judge Lamasney found that the accusation of an *ex parte* conversation concerned the integrity of Judge Kavanaugh and was made with reckless disregard of its truth.

MRPC Rule 1.1 requires that a lawyer provide competent representation to a client, *i.e.,* the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. Rule 1.3 requires that a lawyer act with reasonable diligence and promptness in representing a client. Hermina maintained that, on May 19, 1997, he sent a set of interrogatories in the *Reed* case to Mr. Freedlander, which Freedlander never answered. Crediting Freedlander's testimony that no such interrogatories were sent at that time and that the only interrogatories he ever received in *Reed* were sent in December, 1997 and were answered, Judge Lamasney found that Hermina's failure to file those interrogatories "[a]ffected his ability to prepare for trial" and thereby violated those Rules.

The MRPC 8.4(a), (c), and (d) violations rested on the facts underlying the other violations. In relevant part, Rule 8.4 declares it to be unprofessional conduct for a lawyer (a) to violate any of the MRPC Rules, (c) to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, and (d) to engage in conduct that is prejudicial to the administration of justice. Judge Lamasney found that "[b]ased on the factual findings made," Hermina violated those Rules.

Hermina's exceptions comprise 39 pages and go into great detail concerning the evidence relating to some of Judge Lamasney's findings. We need not be so specific in order to consider the issues before us. The principal basis of his exceptions is that the evidence does not support those findings and therefore does not support Judge Lamasney's conclusions with respect to the Rule violations. We agree in part. Although there clearly was unprofessional conduct on Hermina's part, it did not constitute a violation of some of these Rules.

## DISCUSSION

The initial complaint in *Reed* was filed May 1, 1997. On September 12 of that year, following a scheduling conference, Judge Weinstein—the county administrative judge—entered a scheduling order that, among other things, required written discovery to be served by December 29, and for discovery to be completed by January 26, 1998. A joint pre-trial statement was to be filed by March 20, 1998, in preparation for a pre-trial conference on March 27. In an accompanying Order for Mandatory Settlement/Pre–Trial Conference, the court directed the parties and trial counsel to meet at least two weeks before that conference and endeavor to settle the case. If the parties were unable to agree on a time and place for the meeting, the order directed that it be at 9:00 a.m. in the courthouse lobby on March 13, 1998 (two weeks before the scheduled conference). The accompanying order also set forth the kind of information the joint pre-trial statement was to contain, including a statement by each party of all claims and defenses the party was submitting for trial, the nature of the alleged injury and damages claimed, a list of the party's

witnesses and trial exhibits, and agreed and disputed voir dire questions and jury instructions.

### *MRPC 3.3(a)(1) and 3.5(a)(8)*

The violations of these Rules found by Judge Lamasney rest on common facts. The MRPC 3.3(a)(1) violation was based on her finding that Hermina had, on a number of occasions, falsely stated to the court that BLIC had failed to respond to his discovery requests, and that those statements were "intentionally false." The MRPC 3.5(a)(8) violation was based on Judge Lamasney's finding that Hermina had intentionally disrupted the trial by objecting to documents on the ground that he had not received them, when, in fact, he had, by moving for a mistrial on the ground that BLIC had failed to respond to interrogatories that Judge Lamasney found had never been sent, and by moving to recuse Judge Kavanaugh in the middle of trial because she did not believe his version with respect to those matters.

On May 19, 1997, Hermina sent a certified letter to Freedlander. There is frequent reference to that letter, but we are unable to locate it in the record. Hermina claimed that he enclosed with the letter two sets of interrogatories—one, a set of 26 interrogatories entitled Plaintiff Reed's First Set of Interrogatories, in the *Reed* case, and one in the *Kreh* case, which was among the six other actions Hermina had filed against BLIC. Freedlander contended that the only interrogatories enclosed with that letter were those in the *Kreh* case and that he never received any First Set of Interrogatories in *Reed*. Freedlander testified that the only interrogatories he ever received in *Reed* was a set of four interrogatories, captioned Plaintiff Reed's Second Set of Interrogatories, that he received on December 29, 1997 and answered.

There was a clear dispute in the evidence regarding whether the May 19 letter enclosed a set of interrogatories in the *Reed* case. Hermina did not file a notice in the *Reed* case that the First Set of Interrogatories had been filed until May, 1998—a year after he claimed they were filed and barely a

month before trial.[3] This dispute first arose, of course, during the litigation, and Judge Kavanaugh had found that interrogatories in the *Reed* case were not sent with that May 19 letter. Judge Lamasney, after listening to testimony from Hermina, his brother (who was also his partner), and his secretary, as well as from Freedlander, Erb, and Barnes, and considering a number of documents bearing on the matter, found likewise. That was essentially a credibility determination based on disputed evidence, and we shall not disturb it.

Although we accept the finding that the First Set of Interrogatories were not, in fact, sent on May 19, we do not accept the finding that Hermina deliberately and intentionally misled Judge Kavanaugh in asserting that they *were* sent at that time (Rule 3.3(a)(1)) or that his motion for mistrial based on Freedlander's failure to answer those interrogatories amounted to an attempt to disrupt the trial (Rule 3.5(a)(8)). There appears to be no dispute that interrogatories in the *Kreh* case were enclosed with that letter. Hermina believed that interrogatories in the *Reed* case were enclosed as well, and there is some independent evidence to support that belief, even though Judges Kavanaugh and Lamasney found, as a fact, that the interrogatories were not sent.[4] Judge Kavanaugh never found

---

**3.** Maryland Rule 2–401(d)(2) provides that discovery material shall not be filed with the court but that, instead, the party generating the discovery material shall (1) serve the material on the other party, (2) file a notice with the court stating the type of discovery material served, the date and manner of service, and the party served, and (3) retain the original of the discovery material and make it available for inspection. The Rule does not specify *when* the notice must be filed with the court, although, in adopting the Rule, the Court certainly anticipated that the notice would be filed contemporaneously with service of the material, not a year later. The purpose of the notice filed with the court is to document both the fact that the discovery was served and when it was served. An *ex post facto* filing of the notice hardly serves either purpose and, indeed, can lead to considerable mischief, if not outright fraud.

**4.** On July 15 and July 17, Hermina wrote to Freedlander, asking when he could expect responses to discovery in the "Litigation Against Baltimore Life." Those letters did not identify the *Reed* litigation in particular. On July 30, 1997, and July 31, 1997, Freedlander wrote to Hermina, captioning his letter *Reed v. Baltimore Life Insurance Company,* responding that answers to discovery were not yet due. In light of

a deliberate misstatement. She noted that there was no evidence that he had sent the first set of interrogatories in a timely manner, and commented that "[y]ou may have mismailed them. I am not sure what you did." We sustain the finding that no interrogatories were enclosed with the May 19 letter and that what are labeled the First Set of Interrogatories were never, in fact, served on Freedlander, but we reject the finding that Hermina's representation to the contrary was deliberate and intentional, rather than negligent. There is not, to us, clear and convincing evidence that Hermina did not honestly, even if erroneously, believe that he had sent those interrogatories.

That was not the only basis for Judge Lamasney's finding, with respect to MRPC 3.3(a)(1), of deliberate misrepresentation, or with respect to MRPC 3.5(a)(8), of disruption of the trial. The Rule 3.3(a)(1) violation also rested on Hermina's representations to Judge Kavanaugh that (1) he had not received certain documents in discovery, and (2) he had been precluded by a protective order issued by Judge Rupp from conducting any discovery, both of which Judge Lamasney found to be false.

With respect to the receipt of documents, Judge Lamasney credited the testimony of Judge Kavanaugh, Mr. Erb, and Mr. Barnes over that of Hermina, and we shall not disturb that credibility determination. The substance of that testimony was rather thin, however; some of it was in conflict, and some of it was thoroughly confusing. Clearly, some documents were delivered to Hermina, and he admitted so. He claimed, and his secretary corroborated, that the documents he was given consisted of about 20 pages of old pleadings and did not contain the requested discovery. It is frankly not clear what other documents were delivered. Judge Kavanaugh believed

---

the fact that the only discovery in *Reed* that had been requested at that point, according to Hermina, consisted of the interrogatories he claimed were sent on May 19, Hermina could reasonably have treated Freedlander's comment as an acknowledgment that he had, in fact, received those interrogatories.

that all the documents in question had been turned over to Hermina by Mr. Erb in her chambers, but Mr. Erb confirmed Hermina's assertion that he had not turned them over at that time. Erb stated at one point that he delivered 500 original documents to Hermina in a "red-well tub" and, at another time, said that he had delivered about 1,000 such documents. He never got a receipt for any of the documents and had no verification of their delivery. It strikes us as odd, to say the least, that a lawyer in a hotly contested and contentious case, chock full of discovery disputes that had produced several motions to compel and cross motions for sanctions, would turn over 500 to 1,000 original documents and not get a receipt or have some written evidence of delivery. The evidence on this point is not, to us, clear and convincing.

The issue of Judge Rupp's protective order has more significance. Hermina filed (or at least believed he had filed) a variety of discovery requests in May, 1997, one of which was to take the deposition of a particular handwriting expert. As Freedlander either had filed or intended to file a motion to dismiss the action, he took the position that he was not required to respond to discovery until that motion was decided. Freedlander therefore moved for a protective order to preclude the taking of the deposition. On June 20, 1997, Judge Rupp granted that motion. The only effect of the order was to preclude the deposition. Hermina nonetheless asserted on several occasions that the order precluded him from engaging in any discovery. He sought his own protective order and later objected to the trial testimony of a defense expert on that basis. In making that argument, Hermina was completely misconstruing the order; there was no reasonable basis for a belief that Judge Rupp had precluded Hermina from taking any discovery throughout the rest of the case, and for Hermina to assert that as a ground for precluding discovery by BLIC or precluding trial testimony by a defense witness was a deliberate misrepresentation and thus a violation of MRPC 3.3(a)(1). On this limited basis, we shall overrule Hermina's exceptions to the finding that he violated MRPC 3.3(a)(1).

The Rule 3.5(a)(8) violation also had an additional basis—a motion Hermina made to recuse Judge Kavanaugh. That, too, arose initially from the dispute over whether Hermina had mailed the First Set of Interrogatories on May 19. The issue surfaced, again, on the first and second days of trial. Judge Kavanaugh listened to Hermina, examined the record before her, and made a finding that the First Set of Interrogatories had not been sent. She said that her decision was based, in part, on her assessment of Hermina's credibility, but also on the lack of any contemporaneous documentation that the interrogatories had been sent. Counsel had traded accusations of being untruthful, and, in response to that, Judge Kavanaugh noted in passing that another case that Hermina had filed against BLIC had been dismissed because he had not appeared for trial. What relevance that had and how Judge Kavanaugh even knew such a fact is unclear. Hermina asked whether it was part of some court record, to which the judge replied that she had learned of it through correspondence from Hermina.

The next day, Hermina filed a written motion to recuse Judge Kavanaugh, accusing her of bias against him. The motion mentioned a number of instances of perceived bias but was predominantly based on her not believing Hermina when he said that he had mailed the First Set of Interrogatories in May, 1997. The motion was denied. Judge Kavanaugh explained that, with the lawyers calling each other liars, she had "to make a determination of whether or not I thought the evidence showed that documents had been presented to you." Judge Lamasney concluded that the motion to recuse was made to "bolster and support the misrepresentations already made" and, for that reason, "can not be with an honest intention." From that, she declared that it was intended to, and did, disrupt the orderly progress of the trial, in contravention of MRPC 3.5(a)(8).

We disagree and shall sustain Hermina's exception. We do not question Judge Kavanaugh's ruling on the recusal motion, which was affirmed on appeal by the Court of Special Appeals (*Reed v. Baltimore Life, supra,* 127 Md.App. 536, 549–63, 733

A.2d 1106, 1113–1120), and we do not countenance the filing of motions to recuse simply because a judge makes unfavorable rulings or does not accept a lawyer's statement or explanation. Under all of the circumstances, however, we do not believe that the evidence demonstrates that the motion was made to disrupt the trial or the tribunal. It was a motion that had no merit and was properly denied, but it did not suffice to show a violation of MRPC 3.5(a)(8).[5]

### MRPC 3.2 and 3.4(c) and (d)

The violation of MRPC 3.4(c) was based on Judge Lamasney's conclusions that (1) Hermina "did not provide any discovery after receiving a timely request to do so," and (2) "[b]y failing to participate in the pretrial conference, [Hermina] knowingly disobeyed an obligation created by the scheduling order." In support of the first conclusion, Judge Lamasney found that BLIC had filed a request for answers to interrogatories on December 23, 1997, and that Hermina admitted receiving the request and failing to provide answers. His explanation was that he declined to respond because of his belief that BLIC had failed to respond to his discovery requests, thereby prejudicing his ability to prepare his case. Judge Lamasney found, of course, that Hermina *had* received BLIC's responses, and thus concluded that his failure to respond to BLIC discovery was without merit and constituted a violation of both the discovery rules and Judge Weinstein's scheduling order.

Hermina does not directly challenge this conclusion in his exceptions. We note that, if the underlying finding is valid, so is the conclusion, but the conclusion is valid even if Hermina did not receive all of the discovery to which he was entitled. Retaliation is not a proper basis for failing to comply with valid discovery requests. If a party is unable to answer

---

**5.** In affirming the ruling denying the motion to recuse, the Court of Special Appeals called attention to MRPC 3.1, which precludes a lawyer from asserting an issue unless there is a non-frivolous basis for the assertion. Hermina was not charged with a violation of MRPC 3.1.

discovery because of another party's dereliction or would be prejudiced in some material way if required to respond in advance of compliance by the other side, a proper motion for extension of time to respond can be filed, and the matter can be resolved by the court.

What occurred at the pre-trial conference, like most everything else in this case, was in sharp dispute. The conference, mandated for the purpose of preparing a joint pre-trial statement (*see* Maryland Rule 2–504.1(c)(2)), was brief and inconclusive. Hermina testified that Erb and Barnes, representing BLIC, were loud and rude, and that, as a result, he left without attempting to work on a joint statement. Erb and Barnes both claimed that Hermina had not brought with him the required witness list and exhibits, and that he simply took the documents brought by them and left. Although Erb admitted raising his voice, he and Barnes both denied being rude or making the statements attributed to them by Hermina. As a result of the failure of the conference, BLIC and Hermina each filed a separate pre-trial statement. At some point, apparently in response to a motion for sanctions, Judge Beard ordered Hermina to turn over a witness list and exhibits.

In light of her more general determination that Hermina had engaged in a pattern of "dishonesty and animosity," Judge Lamasney found that Hermina's testimony regarding the pre-trial conference and the joint pre-trial statement was not credible and rejected his version of the event. Judge Lamasney concluded that, by effectively failing to participate in the pre-trial conference, Hermina knowingly disobeyed the scheduling order and thereby violated MRPC 3.4(c) and 3.2. She noted, however, that the failure to produce a joint statement had no real effect on the trial. Judge Lamasney regarded that as an "extenuating circumstance." We regard it as precluding the finding of a violation of MRPC 3.2. We do find, however, that Hermina's conduct constituted a violation of MRPC 3.4(c) and overrule his exception in that regard.

### MRPC 8.2

█ On July 11, 1998, Hermina wrote a letter to Erb, in which he suggested that Erb, Barnes, and "the Court," meaning Judge Kavanaugh, "held a conference, meeting or discussion during which proposed jury instructions were discussed," and he asked whether Erb or the court "ever raised the issue of whether Plaintiff's counsel would be given the *opportunity* or the option of attending the instructions conference/meeting/discussion you had with the Court." He added that "I do note that Mr. Erb informed us of one communication, which the Court had with Defendant's counsel (after the communication was had) on the last day of trial." Hermina asked for a response. Although it does not appear that Hermina sent a copy of the letter to Judge Kavanaugh, she obviously learned of it. The MRPC 8.2 violation rested entirely on this letter. Judge Lamasney found that the accusation of an *ex parte* instructions conference "was made with a reckless disregard as to its truth, and the accusation concerns the integrity of Judge Kavanaugh."

Both Judge Kavanaugh and Mr. Erb flatly denied that any such *ex parte* conference, meeting, or discussion had ever been held. Erb said that, on the last day of trial, while the jury was out and Erb was waiting in the lobby area outside the courtroom, Judge Kavanaugh walked past. She asked if he knew where Hermina was, to which Erb replied that he probably was at lunch. Judge Kavanaugh then said that she might not be present to take the verdict and that, in that event, Judge Beard would take the verdict. She asked Erb to convey that to Hermina, which he did. Apparently, according to Hermina, either his client, Reed, or Reed's friend, Kreh, observed the conversation and thought it improper. That, without any further investigation, is what led to the letter.

What Hermina did was wholly improper. If there was a question in his mind about the conversation between Judge Kavanaugh and Erb that Reed or Kreh observed, he should have brought his client's concern to Judge Kavanaugh's attention and made appropriate inquiry of her, not write a letter to

counsel accusing him and the judge of having an inappropriate *ex parte* communication, which would constitute, for Judge Kavanaugh, a violation of Canon 3 A.(5) of the Maryland Code of Judicial Conduct and, for Erb, a violation of MRPC 3.5(a)(7). We sustain Judge Lamasney's finding that MRPC 8.2 was violated.

### *MRPC 1.1 and 1.3*

The only basis for the violations of these Rules was Judge Lamasney's finding "that the failure to file the request for interrogatories [a]ffected [Hermina's] ability to prepare for trial." We have already discussed the facts surrounding that matter. This bare finding is insufficient to constitute clear and convincing evidence that Hermina violated Rules 1.1 or 1.3.

### *MRPC 8.4(a), (c), and (d).*

We have concluded that Hermina violated MRPC Rules 3.3(a)(1) by misrepresenting the content and effect of Judge Rupp's pre-trial protective order and falsely claiming that he had been precluded from conducting discovery, 3.4(c) by failing to respond to discovery requests and by failing to participate in the pre-trial conference and cooperate in preparing a joint pre-trial statement, and 8.2 by recklessly accusing Judge Kavanaugh of participating in an inappropriate *ex parte* conference. Those conclusions suffice to establish a violation of MRPC 8.4(a), (c), and (d) as well.

### *CONCLUSION*

The fact that we have sustained a number of Hermina's exceptions and found a lack of clear and convincing evidence that certain rules were violated should not be taken as even a partial condonation of his conduct. The several disagreements or differences in recollection that led to some of what occurred could and should have been handled with common sense rather than unjustified outrage and unsupported or, at best, half-supported, accusations.

Under all of the circumstances, including the absence of any prior misconduct and Hermina's commendable *pro bono* activities, we believe that the appropriate sanction for the misconduct in this case is a reprimand.

IT IS SO ORDERED. JOHN W. HERMINA SHALL PAY COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST JOHN W. HERMINA.