McDONALD, J.,
Concurring and Dissenting.
Although the Majority opinion is well thought out and carefully written, I cannot join it. Our primary purpose in attorney discipline is to protect the public from inept or errant lawyers, not to protect public officials from criticism, even if unjustified. I would suspend Mr. Frost for his failure to respond adequately to Bar Counsel’s inquiry, but am not comfortable disbarring on this limited record for what appears to be largely an expression of opinion, misguided though that opinion may be.
Under the Maryland Lawyers’ Rules of Professional Conduct (“MLRPC”) 8.1(b), an attorney should respond to a lawful inquiry from Bar Counsel, even if, in the attorney’s view, the underlying complaint is frivolous or any resulting disciplinary action would ultimately prove untenable. Mr. Frost’s failure to respond substantively to Bar Counsel’s inquiry thus violated MLRPC 8.1(b).[1] An appropriate sanction *273 would be an indefinite suspension with a special condition of readmission that he cooperate with Bar Counsel’s inquiry. In addition, the record of this matter documents erratic behavior by Mr. Frost that raises reasonable questions about his judgment and competence (in the broadest sense). Given our responsibility to the public with respect to those we license to serve it as attorneys, I would also condition Mr. Frost’s readmission on the results of an appropriate medical evaluation. See Maryland Rule 16-760(h)(l).
MLRPC 8.2(a) incorporates in the disciplinary rules a restriction on attorney speech outside the courtroom or a legal proceeding. The alleged violation of MLRPC 8.2(a) in this case is based on the content of an e-mail that Mr. Frost sent to his ex-wife and then inexplicably shared with three other lawyers. MLRPC 8.2(a) prohibits a lawyer from making a statement concerning the qualifications or integrity of a judge (or other legal officer) only if the lawyer makes the statement with knowledge that it is false or with “reckless disregard” as to its truth. The Restatement of the Law Governing Lawyers reiterates that standard and elaborates its rationale:
Lawyers are specially situated to assess the official performance of judges and other judicial and legal officers. Accordingly, both constitutional law and sound social policy require that lawyers have broad latitude in criticizing such officers. Under the rule of New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny, judges and other public legal officers are “public officials,” so that an action by a judge or public legal officer against a lawyer for damages for defamation would require a showing of actual malice. Similar considerations should also lead to application of the standard in New York Times v. Sullivan in lawyer-discipline cases.
Restatement (Third) of the Law Governing Lawyers § 114, comment b (2000 & 2013 Supp.).
The Majority opinion finds that the “knowing or reckless” element is satisfied in this case as a result of Mr. Frost’s failure to participate in the proceedings below and to respond *274 to requests for admissions. In other words, he is deemed to have admitted the intent element of the violation, which, in the view of the Majority opinion, relieves us of the need to consider the actual content and circumstances of his e-mail, or the standard by which the statements in question should be judged. Majority op. at pp. 261, 265-66 n. 11, 85 A.3d at 273, 276 n. 11.
Requests for admissions are typically used to obtain agreement as to the genuineness of documents, the establishment of other foundational facts necessary for the admission of evidence, or the truth of uncontested facts, thereby streamlining the adjudication of a matter. See, e.g., P. Niemeyer & L. Schuett, Maryland Rules Commentary 336 (3d ed. 2004) (“Requests for admissions of fact serve a limited but useful function ____The purpose of the rule is ... to eliminate from trial those matters over which the parties truly have no dispute”). While I do not fault Bar Counsel, or any other litigant, for seeking to have an opposing party concede the entire case through this discovery device, requests for admission that concern the ultimate issue in a case are generally not that useful and thus are not enforced.[2] Id. And when a request on an ultimate issue is “deemed” admitted, it may be more accurately characterized as a default than a finding or holding on the particular issue. Thus, the deemed violation of MLRPC 8.2(a) is largely an echo of the violation of MLRPC 8.1(b) — the failure to respond adequately to Bar Counsel’s inquiry or to participate in the proceedings below. Perhaps the peculiar facts of this case — or the unusual way in which *275 the ultimate issue has been determined — limit the significance of the Court’s holding. On the other hand, it may establish an unfortunate precedent.
I suspect that few lawyers — or judges — have not, at some time, uttered an unkind and undeserved criticism of a judge, an Attorney General, a State’s Attorney, or a Public Defender. No doubt there have been occasions where an attorney, in the aftermath of an adverse ruling, has commented on the parentage of the judge in a way that, even without the benefit of a “deemed admission,” is obviously and literally false, but is essentially a statement of opinion rather than fact. Perhaps such remarks are usually made to those who share the sentiment and, unlike the instant case, do not generate a complaint. But whether there is a violation of MLRPC 8.2(a) should not depend on the sympathies or sensitivities of the listener.[3] In the end, the rule is aimed at intentional factual misstatements, not rude opinions.[4]
The summary of case law in the Majority opinion is certainly accurate. I add four observations.
First, as the authors of the Restatement noted, civil liability for criticism of a public official is limited to false statements made with actual malice — ie., knowledge of falsity or reckless *276 disregard of falsity. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In the context of critical remarks about judges, the Supreme Court has stated that “only those false statements made with the high degree of awareness of their probable falsity demanded by New York Times may be the subject of either civil or criminal sanctions.” Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) (reversing conviction of district attorney who stated that “vacation-minded” judges sympathetic to racketeering interests were responsible for court backlog and impeding vice investigations).
Second, the drafters of MLRPC 8.2(a) intended to incorporate the standards articulated in Garrison and New York Times in that rule. See American Bar Association, Model Rules of Professional Conduct, Proposed Final Draft (May 30, 1981) at 206 (“Rule 8.2 is consistent with that limitation [in New York Times and Garrison ]”); M. Tarkington, The Truth be Damned: The First Amendment, Attorney Speech, and Judicial Reputation, 97 Geo. L.J. 1567, 1587 & n.123 (2009). (As the Majority opinion recounts, some courts have instead chosen not to apply the New York Times standard in favor of a less demanding, “objective” standard. Majority op. at p. 266 n. 11, 85 A.3d at 276 n. 11).
Third, the decisions of this Court under MLRPC 8.2(a) that are relied upon by the Majority opinion all involved statements alleging specific acts of misconduct rather than a general negative characterization of the officials. See Attorney Grievance Comm’n v. McClain, 406 Md. 1, 956 A.2d 135 (2008) (in appeal to circuit court, attorney alleged that District Court judge had admitted personal bias against him and purported to “document” that allegation with false statements about the content of the record); Attorney Grievance Comm’n v. DeMaio, 379 Md. 571, 842 A.2d 802 (2004) (attorney alleged, without factual basis, that judge had ex parte contact with opposing party, had possibly received a “monetary benefit” from that party, and had colluded to remove briefs from public record); Attorney Grievance Comm’n v. Hermina, 379 Md. 503, 842 A.2d 762 (2004) (attorney accused judge of holding ex *277 parte jury instruction conference with opposing counsel in violation of the Code of Judicial Conduct). In this case, only the statements concerning Judge Harrington — i.e., that she allegedly arranged for deputy sheriffs to “illegally” arrest Mr. Frost — appear to go beyond derogatory adjectives.
Finally, discipline imposed by the judiciary that may appear designed to shield judges from general statements of adverse opinions can itself undermine confidence in the judiciary. See J. Dodd, The First Amendment and Attorney Discipline for Criticism of the Judiciary: Let the Lawyer Beware, 15 N. Ky. L.Rev. 129, 144 (1988).
At this intersection of statements of fact and statements of opinion, of protected speech and public officials, it is best to proceed with caution. I would not impose discipline on the basis of a “deemed admission” of the critical intent element. Rather, we should hold the charges under MLRPC 8.2(a) and 8.4(c) in abeyance. If Mr. Frost were suspended on the basis of the other charged violations, and were later to satisfy the conditions for readmission and cooperate with Bar Counsel’s inquiry, I would remand the matter to the hearing judge for further consideration of the remaining charges. See Maryland Rule 16-759(c)(6). But I would not disbar under MLRPC 8.2(a) and 8.4(c) at this time on this record.

. These facts would also support a determination that Mr. Frost violated MLRPC 8.4(a) (violation of the MLRPC) and 8.4(d) (conduct prejudicial to the administration of justice).

. In the instant case, the Request for Admission of Facts and Genuineness of Documents largely concerned the genuineness of numerous items of correspondence involving Mr. Frost, as well as basic facts concerning his legal career and the content of statements he made. However, it also asked him to admit that he made various statements “knowing that the statement was false” and, with respect to the same statements, “with reckless disregard as to its truth or falsity.” Among the other facts deemed admitted was that Mr. Frost is “unable to render adequate legal service by reason of mental or physical illness or infirmity, or addiction to or dependence upon an intoxicant or drug.” This last deemed admission concerning mental capacity conceivably raises a question about the two deemed admissions concerning the intent element.

. In her concurring opinion, Judge Adkins sensibly attempts to limit the reach of the Majority opinion, suggesting a sort of "friends and family” exception to its holding based on the First Amendment. The Restatement of the Law Governing Lawyers adopts a similar approach in limiting the restriction on attorney speech about judges to statements made “publicly” — a qualification not included in MLRPC 8.2(a). See Restatement § 114. In any event, the authors of the Restatement — as well as the drafters of the model for MLRPC 8.2(a) — intended that the New York Times standard be satisfied. And the First Amendment is not confined to discussions among like-minded people, but rather designed to encourage and protect public discourse. See, e.g., Whitney v. California, 274 U.S. 357, 376, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J„ concurring); Snyder v. Phelps, - U.S. -, 131 S.Ct. 1207, 1215-17, 179 L.Ed.2d 172 (2011).

. This was certainly the intent of the drafters of the model rule that became MLRPC 8.2(a). See American Bar Association, Model Rules of Professional Conduct, Proposed Final Draft (May 30, 1981) at 207 ("Rule 8.2 applies to a statement of fact.”).