69 A.3d 451

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Robert Norman LEVIN.**

**Misc. Docket AG No. 10, Sept. Term, 2012.**

Court of Appeals of Maryland.

July 2, 2013.

**430**

Dolores O. Ridgell, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Philip F. Hudock, Esquire, Reston, VA, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BATTAGLIA, J.

Robert Norman Levin, Respondent, was admitted to the Bar of this Court on December 17, 1965. On April 2, 2012, the Attorney Grievance Commission ("Bar Counsel"), acting pursuant to Maryland Rule 16–751(a),[1] filed a "Petition for Disciplinary or Remedial Action" against Levin.

The complaint arose from Levin's representation of Sean Shahparast and Royal Investment Group, LLC, as plaintiffs in a legal malpractice action filed in the Circuit Court for Montgomery County.[2] Years earlier, in an unrelated case in the Circuit Court for Montgomery County, Creative Concrete Corporation, represented by Michael T. Nalls, Esq., sued Shahparast and Royal for the balance of a debt they owed to Creative for a driveway installed by Creative. Creative obtained judgment in November of 2005, in the amount of $24,355, plus $5,000 in attorneys' fees, against Shahparast for the balance of the amount owed for the driveway.

In October of 2010, prior to reaching a settlement in the legal malpractice litigation, Levin was served with a Charging Order in Aid of Enforcement and a Writ of Garnishment by Creative. The Writ named Shahparast as the judgment debtor, Creative as the judgment creditor, and Levin as the garnishee.

In November of 2010, Levin filed an Answer to the Writ of Garnishment in which he denied holding any property of the

---

1. Rule 16–751(a) provides:

 (a) **Commencement of disciplinary or remedial action.** (1) Upon approval or direction of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. A similar case was filed in the District of Columbia in which an attorney licensed in D.C. represented Shahparast and Royal.

judgment debtor. Upon receiving the Answer, Nalls wrote to Levin and expressed his belief that the Writ applied to the unmatured debt arising from Shahparast's ongoing legal malpractice claim. Levin responded in writing that he was not in possession of any of the judgment debtor's property, but that he would honor the court's order should he come into possession of any such property. Nalls then filed a Reply to Levin's Answer, stating that the debt owed by Levin to Shahparast was unmatured and, therefore, garnishable. At this point, pursuant to Rule 2–645(g),[3] the garnishment proceedings became contested. Thereafter, Levin filed a Response to Nalls' Reply. At no point in the garnishment proceedings did Levin argue that the Writ of Garnishment was invalid.

In February of 2011, a settlement in the legal malpractice litigation was reached with Levin receiving two settlement checks with a total value of $107,500. The checks named Levin, Shahparast, and an attorney from a D.C. firm as payees. Levin did not contact Creative or Nalls to inform them of his receipt of the checks. Instead, Levin endorsed the checks and handed them over to his client to be endorsed by the client and the attorney from the D.C. firm.

In March of 2011, upon learning of the legal malpractice settlement, Nalls contacted Levin to inquire about the proceeds, to request an accounting, and to notify Levin that he intended to seek legal relief. Levin responded that he was never in receipt of any funds in connection with the settlement and that those funds had been deposited into the D.C.'s firm's trust account. In March of 2011, Nalls filed a Motion for

---

**3.** Rule 2–645(g) provides:

(g) **When answer filed.** If the garnishee files a timely answer, the matters set forth in the answer shall be treated as established for the purpose of the garnishment proceeding unless the judgment creditor files a reply contesting the answer within 30 days after its service. If a timely reply is not filed, the court may enter judgment upon request of the judgment creditor, the judgment debtor, or the garnishee. If a timely reply is filed to the answer of the garnishee, the matter shall proceed as if it were an original action between the judgment creditor as plaintiff and the garnishee as defendant and shall be governed by the rules applicable to civil actions.

Appropriate Relief and served a Request for Production of Documents on Levin seeking documents related to his representation of Shahparast in the legal malpractice action. After a hearing on the Motion for Appropriate Relief, the Court ordered Levin to produce documents relevant to the garnishment action. Levin failed to produce all of the requested documents by the court-imposed deadline, but produced them at a later date.

In April of 2011, Nalls filed a Motion for Summary Judgment and Petition for Contempt on behalf of Creative against Levin for failing to comply with the court's orders relating to the production of documents and for disobeying the Writ of Garnishment. After a hearing, the Motion for Summary Judgment was granted, the Petition for Contempt regarding the willful violation of the Writ of Garnishment was taken under advisement, and the Petition for Contempt for failing to comply with the Court's Order regarding the production of documents was denied. Thereafter, Levin and Nalls negotiated a settlement. Pursuant to that settlement, Levin agreed to pay $40,000 of his own money to Creative in exchange for the assignment of Shahparast's debt to Creative. The grant of summary judgment was then stricken and the Petition for Contempt was withdrawn.

Prior to the hearing on Creative's Motion for Summary Judgment, Nalls filed a complaint with Bar Counsel regarding Levin's handling of the legal malpractice proceeds. Bar Counsel charged Levin with violations of the Maryland Lawyers' Rules of Professional Conduct 1.15(a), (d), and (e) (Safekeeping Property),[4] 3.4(c) and (d) (Fairness to Opposing Party and

---

4. Rule 1.15 provides in pertinent part:
 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyers' own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and main-

Counsel),[5] 4.1(a) (Truthfulness in Statements to Others),[6] and 8.4(c) and (d) (Misconduct).[7]

In an Order dated April 9, 2012, we referred the Petition to the Honorable Sharon V. Burrell of the Circuit Court for Montgomery County. A hearing was held on September 14,

---

tained. Complete records of the account funds and other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

\* \* \*

(d) Upon receiving funds or property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as which the interests are not in dispute.

5. Rule 3.4 provides in pertinent part that a lawyer:
A lawyer shall not:

\* \* \*

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]

The hearing judge made no findings of fact or conclusions of law regarding Rule 3.4(d), and Bar Counsel filed no exception to the lack of findings regarding that Rule. Accordingly, we do not address the Bar Counsel's allegations regarding Rule 3.4(d). *Attorney Grievance v. Zdravkovich*, 381 Md. 680, 684 n. 2, 852 A.2d 82, 84 n. 2 (2004).

6. Rule 4.1 provides in pertinent part:
(a) In the course of representing a client a lawyer shall not knowingly:
(1) make a false statement of material fact or law to a third person[.]

7. Rule 8.4 in pertinent part provides:
It is professional misconduct for a lawyer to:

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

2012. Nalls and Levin testified and various documents were introduced into evidence including the Charging Order, the Writ of Garnishment, correspondence between Nalls and Levin, and transcripts of the relevant proceedings. Judge Burrell issued the following Findings of Fact and Conclusions of Law in which she determined that Levin violated Rules 1.15(d) and (e) and 3.4(c), but did not violate Rules 1.15(a), 4.1(a), and 8.4(c) and (d):

### Findings of Facts

Robert Norman Levin (hereinafter "Respondent") graduated from Harvard Law School in 1965. He was admitted to the Bar of the Court of Appeals of Maryland in December 1965 and admitted to the Bar of the District of Columbia in January 1966. Respondent is also admitted to the U.S. District Court for the District of Columbia, the U.S. District Court for the District of Maryland, the U.S. Court of Appeals for the Fourth Circuit, the U.S. Court of Appeals for the Federal Circuit, the U.S. Court of Appeals for the District of Columbia Circuit, the U.S. Tax Court, the U.S. Supreme Court, and has been admitted *pro hac vice* to numerous other state and federal courts. He has never been the subject of any disciplinary actions by any court.

Respondent is 72 years of age and has practiced law continuously in Maryland for 47 years. During all times relevant to this matter, Respondent maintained an office for the practice of law in Montgomery County, Maryland.

As of October 2010, Respondent represented Sean Shahparast ("Shahparast") and Royal Investment Group, LLC ("Royal"), who were Plaintiffs in a legal malpractice action filed in this Court against John C. Moffett and his law firm. Mr. Moffett had represented Shahparast and Royal in a real estate matter that led to the malpractice action. The case was styled *Sean Shahparast and Royal Investment Group, LLC vs. John C. Moffett and John C. Moffett Chartered,* Case No. 320660V, and the amount claimed was $700,000. (The Defendants in that action will be referred to as "Moffett.") Leo Roth, Esq. represented Moffett. Mr. Moffett

then filed in this Court a separate suit against Shahparast, Royal, and Shahparast's wife (Homa Ravanbakhsh) for unpaid legal fees. Respondent represented the three defendants. The case was styled *John Moffett Chartered v. Sean Shahparast, Homa Ravanbakhsh and Royal Investment Group, LLC,* Case No. 335738V. The legal malpractice case and the collection case were consolidated by this Court.

Shahparast filed a second and unrelated legal malpractice case in the Superior Court of the District of Columbia against Moffett. Respondent was not counsel in the D.C. litigation. Plaintiffs were represented in D.C. by the firm of Gordon & Simmons.

In a prior and unrelated construction case in this Court, Creative Concrete Corporation ("Creative") had sued Shahparast and Royal, formerly known as Foreclosure Real Estate Services, LLC, to collect payment for a driveway (the "Creative litigation"). Creative was represented by Michael T. Nalls, Esq. ("Mr.Nalls"), an attorney with an office in Montgomery County, Maryland whose practice includes representing construction companies, including debt collection on their behalf. These collection matters included the issuance of Writs of Garnishment and Charging Orders. Respondent was not counsel of record, or otherwise involved in the Creative litigation. In the Creative litigation, a judgment was entered on November 7, 2005, against Shahparast. No judgment was entered against Royal. The principal amount of the judgment claimed by Mr. Nalls to be owed by Shahparast was $24,355, plus a $5,000 attorney's fee, and interest.

Mr. Nalls engaged in extensive post-judgment efforts to collect the judgment, including the issuance of Writs of Garnishment and efforts to attach real property. As of October 2010, Nalls' collection efforts had not been successful. At some point Nalls became aware of the legal malpractice action brought by Shahparast and Royal. On October 4, 2010, Nalls filed a Request for Writ of Garnishment on behalf of Creative against Shahparast as the Judgment Debtor and Respondent as the Garnishee, because

Respondent was counsel for Shahparast in the Moffett case. At the same time Nalls requested the issuance of a Charging Order "against any interest [Shahparast] may have in [Royal] and Foreclosure Real Estate Services, LLC, for the amount of the judgment and interest ... and that said Order be served on Robert N. Levin, Esquire, as Counsel of record in Civil 320660." By this time Creative was owed over $43,000. The Court granted both requests. The Writ of Garnishment was issued on October 8, 2010. The Order for Charging Order in Aid of Enforcement of Judgment was entered on October 15, 2010. The Court directed in the Charging Order that it be served on Respondent as counsel for Shahparast. The Court authorized service in this manner because service on Shahparast in previous matters was difficult and he had failed to abide by previous charging orders.

Respondent was served with both the Writ of Garnishment and the Order For Charging Order in Aid of Enforcement of Judgment. On November 1, 2010, Respondent filed a Garnishee's Answer to Garnishment. In the Answer, Respondent denied being indebted to Shahparast and denied that he was holding any property belonging to Shahparast except: "to the extent that [Shahparast] might be said to have a property interest in the related files and papers" Respondent was holding in connection with his representation of Shahparast in several cases. Upon receipt of the Answer, Nalls sent Respondent a letter dated November 1, 2010, expressing his disagreement with the contents of the Answer. Nalls pointed out in the letter that the "Garnishment would apply to an un-matured debt and the Chose in Action, or claim of Mr. Shahparast and Foreclosure Real Estate Services, Inc./Royal Investment Group, LLC versus John Moffett."

On November 19, 2010, Respondent wrote to Nalls. Of relevance to this case is Respondent's representation that:

> At the moment I do not hold any funds or other property of the judgment debtors.... Should any funds come into my possession that are subject to the

garnishment I will, of course, honor the Court's Order. I am handling the *Moffett* case on a contingent basis and will assume that all an attaching creditor is entitled to are those funds that I would be distributing to my clients.

On November 22, 2010, Nalls filed a Plaintiff's Reply to Garnishee's Answer. At that point the proceedings became contested pursuant to Maryland Rule 2–645. On November 24, 2010, Respondent filed a Garnishee's Response to Plaintiff's Reply to Garnishee's Answer. Due to the representation in Respondent's letter of November 19, 2010, Nalls did not request a trial date since he believed the matter to be uncontested if Respondent received funds in Civil 320660. It was his understanding that the Writ of Garnishment and Charging Order remained in effect.

On February 23, 2011, a written "Settlement Agreement and Release" was entered into between the Shahparast parties and Mr. Moffett, which resulted in dismissal of: (a) the Maryland legal malpractice case against Mr. Moffett, (b) the legal fee claim brought by Mr. Moffett against Shahparast, his wife, and Royal, (c) the D.C. legal malpractice case against Mr. Moffett, and "all currently known or unknown claims, causes of action, and/or grievances ..." and all claims "of any kind known to law, whether or not they are in the contemplation of the parties at the present time and whether or not they may arise following the execution of this release ..." for the sum of $107,500.

The written "Settlement Agreement and Release" identified as "Releasors" Shahparast and Royal. Although Homa Ravanbakhsh was mentioned in the document as agreeing to certain conditions, she was not identified as a Releasor, nor was there a signature line for her to sign. There is only one signature on the Settlement Agreement—that of Shahparast. Above the signature line is the following: "Releasors Sean Shahparast and Royal Investment Group, L.L.C." The Settlement Agreement was drafted by Mr. Roth. Respondent described the document as a "mess," but, for reasons covered by privilege, the document was not corrected.

On February 24, 2011, Respondent received from counsel for the malpractice insurance carrier for Moffett two checks totaling $107,500 in payment of the settlement addressed in the Settlement Agreement and Release. One check, in the amount of $95,000, was made payable to "Sean Shahparast and Robert N. Levin, Esq. & Roger Simmons, Esq., his attorneys," and included an attachment that stated: "Full and complete release and settlement of the Shahparast Maryland matter relative to John Moffett." The other check, in the amount of $12,500, was made payable to "Sean Shahparast and Robert N. Levin, Esq. & Roger C. Simmons, Esq." and included an attachment that stated: "In full and final release of John Moffett in DC matter."

There had never been any discussion amongst the parties regarding two checks. Respondent proposed returning the checks, and having the Settlement Agreement redrafted to correct errors in the document, but was unable to do so, for reasons protected by attorney/client privilege. Instead, Respondent endorsed both checks and gave the checks to Shahparast, who delivered them to the Simmons law firm for the necessary further endorsements and deposit of the checks in the Simmons' firm trust account. Shortly thereafter, Respondent received a check written on the Simmons firm's trust account in the amount of $25,000, which represented Respondent's fee and an amount owed to an expert witness. Respondent did not inform Nalls that he received the checks and did not contact the Court or take any legal action. Nalls continued to monitor the docket entries for the case and contacted defense counsel. Nalls was relatively sure that settlement would be reached in February 2011 or the matter would go to trial on March 7, 2011. Nalls was also assured that the settlement proceeds would bear Respondent's name as well as Shahparast's name. In early March 2011, Nalls observed that lines of dismissal had been entered in Civil 320660 and the other case in which Respondent represented Shahparast and his wife. He then wrote to Respondent on March 2, 3 and 4, 2011. As of March 4, 2011, Nalls knew that the case was settled and he wanted

Respondent to provide information concerning the settlement. Nalls notified Respondent that he intended to seek legal relief. When he received no response from Respondent, Nalls wrote on March 7, 2011, once again requesting a full accounting, and informed Respondent that he planned to take legal action to obtain information related to the settlement from Respondent and Roth.

On March 7, 2011, Respondent wrote back to Nalls. In this letter Respondent stated:

All of the funds from the settlement of all of the cases were paid into the escrow account of the firm handling the action in the Superior Court, Gordon & Simmons, and so I never was the recipient of those funds. Thus, your assumption that I was or would be the recipient of the settlement proceeds is incorrect.

On March 9, 2011, Nalls filed a Motion for Appropriate Relief (Disclosure of Confidential Documents) and a Motion to Shorten Time for the production of documents pursuant to a Notice of Records Deposition served on Leo Roth and a Request for Production of Documents served on Respondent. After a hearing attended by Respondent, Roth and Nalls, on March 9, 2011, the Court ordered the production of the documents relating to the settlement of the Shahparast litigation by 3:00 p.m. on March 16, 2011. The documents were to be disclosed only to Nalls and Bar Counsel. Respondent was served with the Request for Production and Orders in the Courthouse on March 9, 2011. During the hearing before the Honorable Robert Greenberg, Respondent acknowledged that the case had settled and that he and Shahparast had received the checks.

On March 10, 2011, Nalls sent a letter to Respondent demanding payment of the judgment. On March 16, 2011, Nalls sent Respondent another letter requesting that Respondent comply with the Court order prior to 3 p.m. that day. Respondent wrote back on March 16, 2011, and questioned Nalls' basis for requesting the documents be produced in less than 30 days and indicated that Shahparast had the right to review what he intended to produce and

assert his privilege. Respondent further indicated that he was "gathering the requested documents and will provide them once they are all assembled and approved by Mr. Shahparast which I hope will be in the next week or so."

On March 17, 2011, Nalls sent Respondent a letter confirming that Respondent would provide the requested documents by March 21, 2011. Respondent provided some of the requested documentation on March 21, 2011. He did not, however, provide a copy of the Retainer Agreement for the representation of Shahparast. On March 23, 2011, Nalls sent Respondent another letter, requesting this document be provided.

On April 8, 2011, Nalls filed a Motion for Summary Judgment and Petition for Contempt on behalf of Creative. In the Petition for Contempt, Nalls asserted that Respondent had failed to obey the Garnishment and Charging Order and had failed to respond to discovery. On April 18, 2011, a Show Cause Order was issued and, on May 5, 2011, Respondent filed Garnishee's Verified Opposition to Motion for Summary Judgment. On May 19, 2011, a hearing was held before the Honorable Joseph M. Quirk. Judge Quirk found that the funds came into the hands of Respondent on a temporary basis and that Respondent "had an obligation to, at least, make [Creative] aware that he had come into this chose, which is in the form of a check, and that he was certainly not free to then make simply a transfer with an endorsement to a third party ..." Judge Quirk entered judgment against Respondent in the amount owed by the judgment debtor. Although the Court found that Respondent had violated the Orders to produce the documents requested by Nalls, noting that Respondent had not filed for a Protective Order, Judge Quirk did not find Respondent in contempt for failing to produce the documents in compliance with the Orders. Judge Quirk took the issue of contempt for not honoring the garnishment under advisement.

Subsequently Respondent and Nalls discussed settling the matter. Respondent asked Nalls if there was something he could do to resolve the Attorney Grievance complaint.

Nalls indicated that there was nothing he could do about the complaint.

Respondent and Nalls entered into a settlement, under which Respondent paid (out of his own funds) $40,000 to satisfy the obligation to Creative. The debt owed by Shahparast was then assigned to Respondent by Creative. Creative withdrew the motions for contempt and summary judgment and, on June 3, 2011, the Court struck the oral grant of summary judgment and allowed Nalls to withdraw the motion for contempt.

### *Conclusions of Law*

Based upon the preceding findings of fact, this Court concludes that Respondent engaged in professional misconduct in violation of the Maryland Lawyers' Rules of Professional Conduct ("MRPC") as discussed below.

**1. *MRPC Rule 1.15* (Safekeeping Property).** Subsection (a) of this rule requires a lawyer to hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property and to maintain funds in a separate trust account. Subsection (d) requires a lawyer upon receiving funds or other property to which a third person has an interest to promptly notify the third person and to promptly deliver to that person any funds or property to which the person is entitled to receive. Subsection (e) requires that if a lawyer is in possession of property in which two or more persons claim interests the property shall be kept separate by the lawyer until the dispute is resolved.

There is clear and convincing evidence that, on or about February 24, 2011, Respondent came into possession of funds or other property in which Shahparast, Roger Simmons, Respondent and Creative had interests: the two checks representing the settlement proceeds from the malpractice cases. The Court finds that Respondent knew that Creative had an interest in the proceeds of the settlement. Respondent recognized this interest in his Answer to the Writ of Garnishment and Garnishee's Response to Plaintiff's

Reply to Garnishee's Answer and in his letters to Nalls dated November 19, 2010, and March 7, 2011. The Court finds that Respondent knew that Shahparast had an interest in the funds or other property. Shahparast was one of the payees on the checks and Respondent acknowledged during the hearing before Judge Quirk that he knew that Shahparast had an interest in the proceeds of the settlement. The Settlement Agreement was signed by Shahparast on behalf of "Sean Shahparast and Royal Investment Group, LLC." Shahparast was a plaintiff, along with Royal, in the malpractice case that resulted in the settlement. Respondent acknowledged at the evidentiary hearing that Royal was the alter ego of Shahparast. Respondent also knew that the Court had charged Shahparast with Royal's interest in the settlement. Instead of holding the funds or other property in trust, Respondent endorsed the checks and turned them over to Shahparast, the judgment debtor.

This Court finds that Respondent violated MRPC 1.15(d) because he failed to promptly notify Creative of the receipt of the funds and/or property, failed to promptly deliver the funds or other property to Creative and did not promptly render an accounting regarding such property. He did not inform Nalls or the Court that he had received the settlement checks and took no legal action until after Nalls filed the Petition for Contempt and Motion for Summary Judgment.

The evidence demonstrated that Nalls requested an accounting in his letters to Respondent of March 2 and 3, 2011. Respondent did not provide an accounting for the settlement funds until the Court ordered him to do so.

The fact that other parties may have had an interest in the settlement checks and that the exact dollar amount owed to Creative may have been in question or dispute did not relieve Respondent of his obligation to Creative. Under MRPC 1.15(e), Respondent was required to keep the funds or other property separate until any dispute was resolved. Respondent failed to honor this obligation, in violation of MRPC 1.15(e).

Respondent testified that he had expected to receive one check in the amount of $107,000 representing the proceeds of both the Maryland and District of Columbia legal malpractice cases. He received two checks instead, one of which was in the amount of $95,000 and the receipt attached to this check indicated that it was for: "Full and complete release and settlement of the Shahparast Maryland matter relative to John Moffett." But whether one or two checks were received is of no importance in determining whether Respondent violated MRPC 1.15 since, even if one check had been received, Respondent would have had the same obligation to hold the funds or other property of the judgment debtor in trust for Creative until the amounts of the various interests were determined.

Respondent also testified that he did not want to do anything that would have held up the distribution of the funds representing the settlement in the malpractice case and that it could be reasonably assumed that, had he informed Nalls of the receipt of the settlement checks, Nalls would have taken legal action and that would have delayed the distribution of the settlement proceeds. In his letter to Assistant Bar Counsel dated May 13, 2011, Respondent wrote: "It is not denied that had I refused to endorse the checks that Payment would have been stopped but it would have been stopped as to parties not subject to the garnishment order as well as Shahparast." Respondent's desire to avoid delay in the distribution of the settlement funds does not provide a defense or justification for Respondent's failure to honor his professional and ethical obligations.

For the foregoing reasons, there is clear and convincing evidence that Respondent violated MRPC 1.15(d) and (e). The Court does not find by clear and convincing evidence that Respondent violated MRPC 1.15(a) because that rule requires a lawyer to hold property of clients or third persons separate from the lawyer's own property and to maintain funds in a separate trust account and Respondent did not deposit the settlement proceeds into any account.

In his defense, Respondent set forth in his Answer and testified at the hearing that he now believes that the Writ of Garnishment served on him in October 2010 was invalid even though there was no Court ruling to that effect. He also testified that he never considered himself subject to the Charging Order. Respondent characterized his failure to notify Nalls of the receipt of the settlement checks as a legal mistake. The clear and convincing evidence demonstrated that Respondent believed the Writ of Garnishment and the Charging Order were valid throughout the times relevant to this matter. Respondent's letters to Nalls and Court filings did not challenge the validity of the Writ of Garnishment. Respondent did not question the validity of the garnishment during the proceedings before Judge Quirk on May 19, 2011, or in his letter of May 13, 2011, to Assistant Bar Counsel. He testified at trial that in 2010 and 2011 he believed he was obligated to honor the Writ of Garnishment.

But even if he had believed that the Writ of Garnishment and Charging Order were invalid, Respondent was not free to disregard them. All orders of the Court must be complied with promptly. If a person to whom a Court directs an order believes that the order is incorrect the remedy is to appeal. Absent a stay, however, he or she must comply promptly with the order pending appeal. *Attorney Grievance Commission v. Garland,* 345 Md. 383, 398–99, 692 A.2d 465, 472 (1997) (an order issued by a court with jurisdiction over the subject matter and person must be obeyed until it is reversed by orderly and proper proceedings).

But even considering the merits of Respondent's defense, this Court does not find that Respondent has met his burden of establishing it by a preponderance of the evidence. Respondent's defense is based on *Consolidated Construction Services, Inc. v. Simpson,* 372 Md. 434, 445, 813 A.2d 260 (2002), which invalidated garnishments based on a contingency. In *Consolidated Construction,* the Court of Appeals found that under Md.Code Ann. Cts. & Jud. Proc. § 3–305 and Maryland Rule 2–645, the addition of the

term "contingent" in the Rule was a substantive change not in the Statute, and was thus improper. Respondent argued that since he handled the Moffett litigation based on a "contingent fee," the Writ of Garnishment served on him was invalid.

Respondent's reliance on *Consolidated Construction* appears to be misplaced. First, the problem with Md. Rule 2–645 addressed by the Court of Appeals in *Consolidated* was corrected in 2003, when the offending word "contingent" was removed. *See*, list of amendments following Md. Rule 2–645, Vol. 1, 2012 Repl.Vol. By 2010, when the Writ of Garnishment was issued in the underlying case, the rule only referred to "any debt owed to the judgment debtor, whether immediately payable or unmatured." There is no evidence that the judgment creditor argued that he was entitled to attach a contingent debt or that the Court believed that such a request would be proper. In the Request for Charging Order, Nalls referenced "any claims, choses in action, interests in property, funds, settlement proceeds, recoveries, judgments, money, claims, debts owed to Royal Investment Group, LLC whether immediately payable or unmatured, or other property of the Defendant, Sean Shahparast and as to Royal Investment Group, LLC." Respondent's fee arrangement with the judgment debtor would not make the debtor's interest contingent as described by the Court of Appeals in *Consolidated.*

Second, the facts in this case are very different from those in *Consolidated,* where the judgment debtor did not contribute to or receive any funds under the terms of the settlement agreement. It was for this reason that the Court of Appeals found that the writ of garnishment that was served on the parties to the settlement agreement other than the judgment debtor, the garnishees, were not valid. 372 Md. at 442, 444 [813 A.2d 260].

Respondent also appears to contend that Nalls was trying to garnish a contingent debt rather than a matured/unmatured debt. "A matured debt is one in which the sum is certain and is due, i.e., matured. An unmatured debt is one

in which the sum is certain *and* the time for payment of the debt has not yet occurred. Generally, a contingent sum is no more than a possibility that a presently unascertainable sum might possibly be owed to the debtor from the person sought to be garnished at some future time." 372 Md. at 448–449 [813 A.2d 260]. The "contingency," therefore, must relate to the garnishee's liability to the debtor. There is no question that Respondent would be liable to Shahparast in some amount that could be determined and that that liability existed at the time Respondent received the checks representing the settlement proceeds. *See, e.g., Belcher v. Government Employees Insurance Company*, 282 Md. 718, 387 A.2d 770 (1978); *Fico v. Ghingher*, 287 Md. 150, 411 A.2d 430 (1980) (an interest was unmatured, not contingent, even though the amount of the liability could not presently be determined, if the amount could be definitely ascertained in the future after all disputed claims had been settled).

Maryland Rule 16–757 provides that "[a] respondent who asserts an affirmative defense ... has the burden of proving the defense ... by a preponderance of the evidence." Respondent has not met his burden in this case with respect to the Writ of Garnishment. Respondent has met his burden with respect to the Charging Order, but, for the reasons set forth below, it does not change the Court's conclusions of law.

Respondent contends that Mr. Nalls improperly served the Charging Order on him by using Maryland Rule 2–649(a) to recover Shahparast's interest in Royal, LLC. Rule 2–649(a) provides that a Charging Order is requested by "a judgment creditor of a partner ...", and the Court "may issue an order charging the partnership interest of the judgment debtor...." Since Royal was an LLC, and not a partnership, the Charging Order was invalid, as a matter of law. Further Maryland Rule 2–649(b) requires that the Charging Order be served on a general partner. Because Royal was an LLC, and not a partnership, there was no "partner" to be served. The Charging Order should have been served on the company's resident agent, which Re-

spondent was not. Lastly, in *R & D 2001, LLC v. Rice*, 402 Md. 648, 655 [938 A.2d 839] (2008), the Court of Appeals held that a Charging Order cannot apply to a member's interest in an LLC. The Court found that the proper procedure for garnishing property of an LLC was by garnishment.

While Respondent may be correct that the Charging Order did not apply to Royal, the crux of Petitioner's charges pertain to the Writ of Garnishment and not the Charging Order. Even if Respondent or Shahparast had raised objections to the Charging Order, it would not have discharged Respondent's obligations under the Writ of Garnishment.

*2. MRPC Rule 3.4(c).* This rule provides that a lawyer shall not disobey the rules of a tribunal. Respondent was obligated under the rules of the Circuit Court for Montgomery County to honor the Writ of Garnishment and Charging Order to hold the property of the judgment creditor, subject to further proceedings. As indicated above, he failed to honor these Orders, thereby violating MRPC 3.4(c). Respondent clearly knew about the obligation and represented to the Court and judgment creditor's counsel that he would honor the Writ of Garnishment and Charging Order. He did not raise objections with the Court to either the Writ of Garnishment or Charging Order or otherwise assert that no valid obligations existed.

In response to the Attorney Grievance Commission complaint, Respondent asserted that he never had the actual settlement funds in his possession and control because he did not deposit the checks. But the fact that Respondent did not deposit the checks does not mean that the funds were not in his possession. The Writ of Garnishment provided that Respondent was to hold the property of the judgment debtor subject to further proceedings of the Court. The fact that Respondent endorsed the checks, and turned the checks over to Shahparast, demonstrates that he considered the checks and the settlement proceeds represented by the checks to be Shahparast's property.

Although Respondent failed to comply with the Order of the Court to produce the settlement documents to Nalls prior to 3:00 p.m. on March 16, 2011, this Court does not find that to be a violation of Rule 3.4(c) because Respondent informed Nalls that he could not produce the documents in that time frame and asked for additional time. Nalls agreed to additional time and Respondent supplied what he had at a later date.

**3. *MRPC Rule 4.1.*** Subsection (a) of this rule provides that a lawyer shall not knowingly make a false statement of material fact or law to a third person or fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client. Petitioner argues that Respondent made false statements in violation of Rule 4.1(a) when he did not keep his promise to Nalls to honor the Writ of Garnishment and when he wrote in a letter to Nalls that he was not the recipient of settlement proceeds. This Court does not find by clear and convincing evidence that these acts constitute false statements of material fact or law pursuant to Rule 4.1(a). In order for the letter that Respondent wrote to Nalls stating that he would honor the Writ of Garnishment to be a false statement, there would have to be evidence that when Respondent wrote the letter he had no intention of honoring the Writ. That fact has not been established by clear and convincing evidence. Whether Respondent changed his mind or somehow believed that he was not obligated to honor the Writ at the time that he received the settlement checks does not make the letter, when written, a knowingly false statement.

With respect to the letter to Nalls indicating that Respondent was not the recipient of settlement proceeds, the Court finds that Respondent interpreted the garnishment order in a way such that because he endorsed the checks and did not deposit them into his trust account, then the funds did not come into his possession. Although this interpretation may have been erroneous, this Court does not find by clear and convincing evidence that Respondent made a false statement by this assertion.

***4. MRPC Rule 8.4 (Misconduct).*** This rule makes it professional misconduct to engage in conduct involving dishonesty, fraud, deceit or misrepresentation [subsection (c)] or to engage in conduct that is prejudicial to the administration of justice [subsection (d)].

In Maryland, a finding of deceit and misrepresentation in violation of MRPC 8.4(c) must be found to be intentional. *Attorney Grievance Commission v. Clements*, 319 Md. 289, 298, 572 A.2d 174, 179 (1990). A misrepresentation is made when the attorney knows the statement is false and cannot be the product of mistake, misunderstanding or inadvertence. *Attorney Grievance Commission v. Siskind*, 401 Md. 41, 68–69, 930 A.2d 328 (2007). As stated in section 3 above, there is no clear and convincing evidence that Respondent knowingly made false statements, thereby acting dishonestly. There is also no clear and convincing evidence that Respondent intentionally made misrepresentations. Accordingly, the Court does not find that Respondent violated Rule 8.4(c).

Moreover, although this Court found by clear and convincing evidence that Respondent violated Rules 1.15(d) and (e) and 3.4(c), it does not automatically follow that Respondent violated Rule 8.4(c) as well. In *Attorney Grievance v. Stolarz*, 379 Md. 387, 842 A.2d 42 (2004), the Court of Appeals held that the attorney's failure to notify a bank, which was the third-party assignee/creditor of his client, of the receipt of settlement funds and to timely pay the assignment, violated Rule 1.15(b). The attorney in *Stolarz* contended that his failure to pay off the bank loan at the time of settlement was an innocent error. The Court of Appeals rejected this argument, noting that:

> We do not accept the implication of Stolarz's argument that Rule 1.15 contains an "innocent error" safe harbor exception. This Court has explained on numerous occasions that with regard to Rule 1.15 "an unintentional violation of this rule ... is still a violation of the attorney's affirmative duties imposed by the rule."

379 Md. at 399 (citations omitted). Accordingly, while intent is not a factor in determining whether there has been a violation of Rule 1.15 or Rule 3.4, it is a factor in determining whether an attorney knowingly engaged in conduct involving dishonesty, fraud, deceit or misrepresentation. Such intent is not present in this case.

The Court also does not find clear and convincing evidence that Respondent violated Rule 8.4(d). Every mistake that a lawyer makes, broken promise or wrong interpretation of the law does not rise to conduct that reflects negatively on the legal profession. *Cf. Attorney Grievance Commission v. Rose*, 391 Md. 101, 892 A.2d 469 (2006) (attorney found to violate Rule 8.4(d) where he failed to promptly, completely and truthfully respond to Bar Counsel and failed to diligently represent client); *Attorney Grievance Commission v. Mahone*, 398 Md. 257, 920 A.2d 458 (2007) (attorney violated Rule 8.4(d) where he left courtroom while judge was announcing his opinion); *Attorney Grievance Commission v. Hall*, 408 Md. 306, 969 A.2d 953 (2009) (attorney violated Rule 8.4(d) where he had a sexual relationship with his client).

### *Mitigating Factors*

Respondent has proven the following mitigating factors by a preponderance of the evidence:

1. *Absence of a prior disciplinary record.* In the 47 years Respondent has been in practice, he has never been sanctioned by any Court.

2. *Absence of dishonest or selfish motive.* Respondent did not stand to benefit in any way from the error he has acknowledged. Nalls testified that Respondent's claim for his contingent fee took priority over the judgment lien. Respondent would have received his legal fee without regard to the garnishment issue. He did not act to obtain any benefit for which he was not entitled.

3. *Cooperation with Bar Counsel and this Court.* Respondent has been fully responsive and cooperative in a timely manner.

### Remedial Action

It is undisputed that Respondent used $40,000 of his own funds to make the judgment creditor whole, well before Bar Counsel took any action.

### Conclusion

For the foregoing reasons, the Circuit Court for Montgomery County, Maryland, on this 31st day of October, 2012, finds that Respondent Robert Norman Levin has violated the Maryland Lawyers' Rules of Professional Conduct 1.15(d), 1.15(e), and 3.4(c). The Court further finds that Respondent has established mitigating factors and that he took remedial action.

(Internal footnotes omitted).

 "This Court has original and complete jurisdiction over attorney disciplinary proceedings in Maryland." *Attorney Grievance v. Seltzer,* 424 Md. 94, 112, 34 A.3d 498, 509 (2011), quoting *Attorney Grievance v. Stern,* 419 Md. 525, 556, 19 A.3d 904, 925 (2011). We "review de novo the circuit court judge's conclusions of law." Rule 16–759(b)(1). "In our independent review of the record, we accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous." *Attorney Grievance v. Chapman,* 430 Md. 238, 273, 60 A.3d 25, 46 (2013), quoting *Attorney Grievance v. Lara,* 418 Md. 355, 364, 14 A.3d 650, 656 (2011).

 Both Levin and Bar Counsel filed exceptions that require an introductory discussion of the nature and validity of Creative's garnishment interest in the legal malpractice settlement proceeds. Section 3–305 of the Courts and Judicial Proceedings Article, Maryland Code (1973, 2006 Repl.Vol.) [8]

---

**8.** At the time the Writ of Garnishment was issued in 2010, Section 3–305 of the Courts and Judicial Proceedings Article, Maryland Code

and Rule 2–645 [9] govern the garnishment of property. *Consolidated Construction Services, Inc. v. Simpson*, 372 Md. 434, 447, 813 A.2d 260, 268 (2002). Section 3–305 and Rule 2–645(a) permit attachment on unmatured interests. Contingent interests, however, "are not garnishable under Maryland law." *Consolidated Construction*, 372 Md. at 448, 813 A.2d at 268.

An unmatured interest, in this regard, is an interest in which the amount of the garnishee's liability may be uncertain, but there is no question about liability. *Belcher v. Government Employees Insurance Company*, 282 Md. 718, 724 n. 3, 387 A.2d 770, 774 n. 3 (1978). "A contingent interest, on the other hand, is one in which liability is not certain and absolute, but depends on some independent event," such as a finding of liability in a pending lawsuit. *Id.*

The Writ of Garnishment in this case was issued on October 8, 2010. Levin was served with the Writ later that month before a finding of liability or settlement of the legal malpractice case, which did not occur until February 23, 2011. Thus, at the time Levin was served with the Writ of Garnishment, liability under the Writ to the judgment debtor was contingent on the outcome of the legal malpractice case. At the time the Writ was issued, then, the legal malpractice claim was not garnishable under Maryland law. *Consolidated Construction*, 372 Md. at 447–48, 813 A.2d at 268.

---

(1973, 2006 Repl.Vol.) provided: "An attachment may be issued against any property or credit, matured or unmatured, which belong to a debtor." The language of Section 3–305 remains unchanged. Md. Code (1973, 2013 Repl.Vol.) § 3–305 of the Courts and Judicial Proceedings Article.

9. Rule 2–645(a) (2010) provided:
 (a) **Availability.** This Rule governs the garnishment of any property of the judgment debtor, other than wages subject to Rule 2–646 and a partnership interest subject to a charging order, in the hands of a third person for the purpose of satisfying a money judgment. Property includes any debt owed by the judgment debtor, whether immediately payable or unmatured.
The language pertinent to this opinion remains unchanged.

In his exceptions, Levin initially asserts that Nalls should have reported to the court from the inception of the garnishment action that the interest was contingent because, he asserts, the court may not have issued the Writ of Garnishment. In the alternative, he asserts, if Nalls was unaware that the debt was contingent when he requested the garnishment, upon reading the *Consolidated* decision in March of 2011, Nalls should have reported to the court that the Writ of Garnishment was invalid or should have withdrawn the Writ.

According to Judge Burrell's Findings of Fact, however, Nalls argued that interest was subject to garnishment as an unmatured debt. Nalls testified, in fact, that even after reviewing the *Consolidated Construction* decision, his position regarding the debt at issue being unmatured, rather than contingent, had not changed. Albeit incorrect, Nalls' belief went unchallenged throughout the garnishment proceeding. More importantly, what Nalls believed or did is not relevant to our task of determining whether Levin violated the Rules of Professional Conduct. *See Attorney Grievance v. Ellison,* 384 Md. 688, 705, 867 A.2d 259, 269 (2005).

Levin also argues that Bar Counsel should not have proceeded against Levin upon receipt of a detailed letter in March of 2012 from Levin's counsel addressing the *Consolidated Construction* decision and the invalidity of the Writ. Bar Counsel's position, however, with which we agree, is that the validity of the Writ of Garnishment does not control our consideration of whether Levin violated the Rules of Professional Conduct. *Cf. Attorney Grievance Commission v. Garland,* 345 Md. 383, 398–99, 692 A.2d 465, 472–73 (1997).

Levin excepts also to the Findings because, he asserts, they failed to refer to the fact that on June 10, 2011, Judge Quirk wrote to Bar Counsel to inform him that the grant of Summary Judgment was stricken and the Petition for Contempt was withdrawn, presumably indicating that Judge Quirk found Levin had not acted in bad faith or violated any Rules of Professional Conduct. Levin's exception, however, misstates what the documents introduced at the hearing reveal. Judge

Quirk's letter to Bar Counsel did state that the Motion for Summary Judgment and Petition for Contempt were withdrawn in the garnishment case, but the purpose of this letter was to "report potential disciplinary rule violations" by Levin.

Levin next excepts to the hearing judge's omission of some of his proposed findings of fact submitted after the disciplinary proceeding. We have, however, noted that proposed findings are just that, proposed, and a hearing judge is under no obligation to accept proposed findings. *See Attorney Grievance v. Joseph,* 422 Md. 670, 696, 31 A.3d 137, 153 (2011); *Attorney Grievance Commission v. Keister,* 327 Md. 56, 60 n. 9, 607 A.2d 909, 911 n. 9 (1992).

Levin finally excepts to the Findings by arguing that Bar Counsel failed to meet his burden of proof. *See* Rule 16–757(b).[10] We deny this exception because the hearing judge found that Levin was served with the Writ; that Levin believed it to be valid throughout the garnishment proceedings; that Levin did not openly challenge the Writ through the regular channels of motions and appeal; that, thereafter, upon settlement of Shahparast's legal malpractice claim, Levin received two checks; that when Levin received these checks, he knew that two or more persons claimed an interest in them, but did not keep those funds separate until the dispute between those parties was resolved; and that Levin, in violation of the Writ of Garnishment that had gone unchallenged, endorsed those checks and handed them over to his client. These findings were not clearly erroneous and were sufficient to support the Rules violations discussed herein.

Levin excepts to the conclusion that he violated Rule 1.15(d), which states:

---

**10.** Rule 16–757 in pertinent part provides:

(b) **Burdens of proof.** The petitioner has the burden of proving the averments by clear and convincing evidence. A respondent who asserts an affirmative defense or matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

According to Levin, "[s]ince the Writ of Garnishment was invalid under *Consolidated,* the third party (Creative) had no 'interest' in the funds, so there was no obligation to notify and deliver the funds, or provide an accounting." Rule 1.15 does not define what "interest" in property is sufficient to trigger Levin's duty to turn over what otherwise would be his client's property to Creative.

■ An interest in property, albeit in different contexts, is generally defined as a legitimate claim of entitlement to that property. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972); *Reese v. Department of Health and Mental Hygiene,* 177 Md.App. 102, 155, 934 A.2d 1009, 1040 (2007). Rule 1.15(d), although silent as to the definition of interest, suggests in its terms that a third party's entitlement to funds is a mandatory prerequisite to disbursement by explaining that the "lawyer shall deliver promptly to the ... third person any funds or other property that the ... third person is *entitled* to receive." (emphasis added). Entitlement, then, is the dispositive concern. *Attorney Grievance v. Cherry–Mahoi,* 388 Md. 124, 157, 879 A.2d 58, 78 (2005) (attorney violated former Rule 1.15(b), now 1.15(d), by failing pay creditors "the monies they were *entitled* to receive...." (emphasis added)); *Ellison,* 384 Md. at 709–10, 867 A.2d at 271–72 (former Rule 1.15(b), current Rule 1.15(d), implicated where attorney subject to a valid assignment); *Attorney Grievance v. Stolarz,* 379 Md. 387, 400, 842 A.2d 42, 49 (2004) ("As the assignment between the client and creditor gave the creditor an *enforceable* interest in the proceeds of the settlement, [attorney's] knowledge

of the agreement is sufficient to raise ethical duties to the creditor." (emphasis added)). At the time the Writ of Garnishment was issued, Creative was not entitled to a portion of the malpractice claim, because, as a contingent interest, it was not garnishable. *Consolidated Construction*, 372 Md. at 447–48, 813 A.2d at 268. Receipt of the funds by Levin pursuant to the settlement, months after the Writ of Garnishment was served, did not render enforceable a Writ that was unenforceable when issued. *Cf. United States v. Williams*, 279 Md. 673, 679, 370 A.2d 1134, 1137 (1977). Levin's agreement to turn over the malpractice funds after the Writ was issued also did not alter the Writ's unenforceability. As a result, we sustain Levin's exception to the conclusion that he violated Rule 1.15(d).

Levin also argues, however, that his conduct did not violate Rule 1.15(e), which provides:

> (e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which interests are not in dispute.

Property that is disputed under Rule 1.15(e) is substantially different than property to which a third party is entitled under Rule 1.15(d). Levin clearly violated Rule 1.15(e) because he knew of the claim filed by Creative.

When Levin received the checks for $107,500 in settlement of the legal malpractice claim, he acknowledged that Creative had filed a claim as an "attaching creditor":

> Should any funds come into my possession that are subject to the garnishment I will, of course, honor the Court's Order. I am handling the [legal malpractice] case on a contingent basis and *will assume that all an attaching creditor is entitled to are those funds that I would be distributing to my client.*

(Emphasis added). Although acknowledging the dispute between Creative and his client regarding the legal malpractice

funds, Levin did not separate those funds pending its resolution, but instead endorsed the checks and forwarded them to his client in violation of Rule 1.15(e).

Levin further excepts to the conclusion that he violated Rule 3.4(c) because, according to him, he had no duty to respond to the Writ, except by his disavowal of its validity by the transmission to his client of the disputed funds. Rule 3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." "Open refusal" is not defined in the Rule, but commentators have suggested that such a refusal is "good faith and open noncompliance in order to test an order's validity." 2 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 30.9, at 30–21 (3d ed.2001, 2011 Supp.); *see also In the Disciplinary Matter Involving Ford,* 128 P.3d 178, 180–82 (Alaska 2006). The breadth of "open refusal" need not be explored in the instant case, because Levin never openly challenged the Writ because of the contingent interest claim, in any context other than in the instant grievance proceeding.

In this regard, Levin's obligation was to be open in his refusal to honor the Writ which may have been manifested in a Motion to Quash the Garnishment, *see Cole v. Randall Park Holding Co.,* 201 Md. 616, 625, 95 A.2d 273, 278 (1953) ("A motion to quash is a proceeding in the nature of a petition to the Court, without an appearance on the merits of the case, to dismiss the attachment on the ground that the proceedings are defective. The defects, upon which the motion is based, may either be apparent upon, or *dehors* to the proceeding." (Internal quotation marks and citations omitted)); an Answer to the Writ challenging the contingent nature of Creative's claim being attached, *see* Rule 2–645(e); or an appropriate motion, once the proceedings became contested, *see* Rule 2–645(g) (providing that contested garnishment actions "shall be governed by the rules applicable to civil actions"). Therefore, we overrule Levin's exception to the determination that he violated Rule 3.4(c).

We turn now to Bar Counsel's exception. Bar Counsel, citing *Attorney Grievance v. Usiak,* 418 Md. 667, 18 A.3d 1 (2011) and *Attorney Grievance Commission v. Garland,* 345 Md. 383, 692 A.2d 465 (1997), excepts to the conclusion that Levin did not violate Rule 8.4(d) when he knowingly forwarded the proceeds of the legal malpractice settlement to his client. Rule 8.4(d) provides that "[i]t is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice[.]" We have determined that Levin violated Rule 3.4(c) because he did not appropriately challenge the Writ of Garnishment by an "open refusal" and did not escrow the funds in dispute in violation of Rule 1.15(e), all of which undermined faith in the administration of justice. *See Usiak,* 418 Md. at 688, 18 A.3d at 13; *Byrd,* 408 Md. at 482, 970 A.2d at 889; *Attorney Grievance v. Hermina,* 379 Md. 503, 521, 842 A.2d 762, 772 (2004); *Garland,* 345 Md. at 398, 692 A.2d at 473. Accordingly, Bar Counsel's exception is sustained.

■ Having determined various Rule violations we must now determine the appropriate sanction for Levin. Bar Counsel recommends a 30–day suspension. Levin argues that no sanction should be imposed, or, in the alternative, that a reprimand would be appropriate.

■ The goal of imposing sanctions in attorney grievance cases is to protect the public. *Chapman,* 430 Md. at 277, 60 A.3d at 49. The goal is not to punish an offending attorney. *Id.* "We have also noted that '[t]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed.'" *Attorney Grievance v. Stinson,* 428 Md. 147, 196, 50 A.3d 1222, 1251 (2012), quoting *Attorney Grievance Commission v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). In imposing sanctions, we will consider "the nature of the ethical duties violated in light of any aggravating or mitigating circumstances." *Attorney Grievance v. Paul,* 423 Md. 268, 284, 31 A.3d 512, 522 (2011).

As mitigation, Judge Burrell found that Levin, in 47 years of practice, has never been sanctioned by any court, that Levin did not act with a selfish or dishonest motive, and that Levin had fully cooperated with Bar Counsel during the disciplinary proceeding. Moreover, Judge Burrell found that Levin took remedial action by paying Creative $40,000 of his own money, well before Bar Counsel took any action against him.

In arguing that a 30–day suspension is appropriate, Bar Counsel points to *Usiak,* 418 Md. 667, 18 A.3d 1, and *Garland,* 345 Md. 383, 692 A.2d 465, where we imposed suspensions on attorneys for violating court orders, and distinguishes *Attorney Grievance v. Mahone,* 398 Md. 257, 920 A.2d 458 (2007) and *Attorney Grievance v. Hermina,* 379 Md. 503, 842 A.2d 762 (2004), in which we imposed reprimands for violating court orders or direct commands of the court. In *Usiak,* 418 Md. at 691, 18 A.3d at 15, we imposed a 60–day suspension for a flagrant violation of a court order to remain in the courtroom when Usiak "showed no remorse and was adamant that if presented with the same situation again, his actions would be the same." *Garland,* 345 Md. at 399, 692 A.2d at 473, effected an indefinite suspension with the right to reapply in six months because Garland "showed an utter disregard for the laws of this State," had multiple alcohol related driving convictions, and, despite a serious alcohol problem, he continuously disregarded rehabilitation attempts.

By contrast, in *Mahone,* 398 Md. at 271, 920 A.2d at 466, we reprimanded Mahone for conduct that was disruptive in court, but took into consideration that his client was not prejudiced as a result of his conduct and Mahone had no prior disciplinary record. In *Hermina,* 379 Md. at 522, 842 A.2d at 773, we reprimanded an attorney for, among other violations, refusing to honor a court's discovery order and considered, in imposing a reprimand, that he had no prior disciplinary history and a record of engaging in *pro bono* activities.

Levin's conduct, sanctionable as we have discussed, is mitigated by his unblemished 47–year record as an attorney, his

recompense of $40,000 to Creative, and his cooperation with Bar Counsel. A public reprimand is the appropriate sanction.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ROBERT NORMAN LEVIN.**

ADKINS, J., dissents.

Dissenting Opinion by ADKINS, J.

This is an odd situation. Respondent's alleged misconduct occurred in connection with his failure to distribute proceeds of a settlement to his client's judgment creditor who filed a writ of garnishment. Under the Maryland law, however, the settlement proceeds were not garnishable. Nevertheless, the Majority holds Respondent responsible for violating Rules 1.15(e) and Rule 3.4(c). Because, as the Majority acknowledges, there was nothing in Respondent's hands that was subject to garnishment, I would not find Respondent in violation of those two rules.

The Writ of Garnishment in this case required Respondent "to hold the property of the judgment Debtor named above subject to further proceedings in this Court." Under *Consolidated Construction Services, Inc. v. Simpson*, 372 Md. 434, 813 A.2d 260 (2002), however, the settlement proceeds that came to Respondent's possession were not garnishable. The Majority concedes as much:

> At the time the Writ of Garnishment was issued, Creative was not entitled to a portion of the malpractice claim, because, as a contingent interest, it was not garnishable. Receipt of the funds by Levin pursuant to the settlement months after the Writ of Garnishment was served did not render enforceable a Writ that was unenforceable when issued. Levin's agreement to turn over the malpractice

funds after the Writ was issued also did not alter the Writ's unenforceability.

Maj. Op. at 458, 69 A.3d at 468–69 (citations omitted).

Since the settlement proceeds were not the judgment creditor's property, were not subject to garnishment, and were not covered by the Writ of Garnishment, I do not see how Respondent could have violated Rules 1.15(e) or 3(4)(c). Rule 1.15(e) provides:

> When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved.

The Majority maintains that "Levin clearly violated Rule 1.15(e) because he knew of the claim filed by Creative." Maj. Op. at 458, 69 A.3d at 469. I disagree.

Comment 5 to Rule 1.15 provides that "[a] lawyer may have a duty under applicable law to protect . . . third-party claims against wrongful interference by the client," but that duty arises when there is a "lawful" claim against the funds and "when the third-party claim is not frivolous under applicable law." If that is so, the lawyer indeed "must refuse to surrender the funds or property to the client until the claims are resolved." *Id.*

But when there is clear law that renders the writ of garnishment invalid, the lawyer has no such obligation. Even if Levin was under the mis-impression that Creative had a valid interest in settlement funds, but that he could evade his obligations under Rule 1.15 so long as he never deposited or cashed the checks, the fact remains—Creative had no valid claim to the funds. With no valid claim, we should not hold the lawyer responsible for a violation of Rule 1.15(e).

Neither did Levin violate Rule 3.4(c). That rule provides that "A lawyer shall not: . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." We all agree that "Creative was not entitled to a portion of the malpractice

claim, because, as a contingent interest, it was not garnishable." Maj. Op. at 458, 69 A.3d at 468–69. Thus, the Writ of Garnishment was invalid, and Levin did not "disobey an obligation" by forwarding the settlement checks to the D.C. firm. *See In re Conduct of Tamblyn,* 298 Or. 620, 695 P.2d 902, 906 (1985) (finding no violation of a disciplinary rule because the preliminary injunction without a bond "only seemed to be an order and was 'in truth no order at all.' When Tamblyn advised his clients to disobey the order . . . there was 'no order' to disobey.").

To be sure, Respondent may not have had an altogether pure heart, in that his goal was to keep the settlement funds away from his clients' creditors, and to do so secretly. But the burden of proof in disciplinary proceedings is "clear and convincing evidence." Md. Rule 16–757(b). I cannot find my way to a conclusion that a lawyer commits misconduct just because he had "bad" intent to violate a rule in a situation, when examination of clear precedent reveals that the rule does not apply in the first place. *See Consol. Constr. Servs., Inc.,* 372 Md. at 434, 813 A.2d at 260. We should always keep in mind the serious consequences for an individual lawyer as we impose even the lowest form of discipline. A reprimand imposed on a good lawyer can have a profound impact on his reputation, a commodity that is irreplaceable. As the old saying goes, "It takes a lifetime to build a good reputation, but you can lose it in a minute."

In conclusion, I would not find Respondent violated any of the Rules with which he was charged, and accordingly would dismiss the Petition.